UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THREE CELLULAR DEVICES SEIZED FROM NICOLE MCLAUGHLIN ALL OF WHICH ARE CURRENTLY STORED IN THE DEA BANGOR EVIDENCE LOCKER | No. 1:22-mj-00100-JCN |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Jonathan L. Richards, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for three cellular devices seized from Nicole McLaughlin which are currently stored in an evidence locker located at the US Drug Enforcement Administration ("DEA") Bangor Office. (hereinafter "Cellular Device 1", "Cellular Device 2", "Cellular Device 3" – collectively the "Cellular Devices"). This affidavit and accompanying application is part of an ongoing drug trafficking investigation.

2. I am conducting an investigation into the drug trafficking activities of Nicole McLaughlin and others. As discussed in more detail below, my investigation relates to the trafficking of large quantities of methamphetamine throughout Aroostook County. I have probable cause to believe that the Cellular Devices contain evidence of communications and records concerning the operation of the drug trafficking organization and Nicole McLaughlin's participation in its activities.

3. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I am a Task Force Officer ("TFO") with the U.S. Drug

Enforcement Administration, on assignment from the Maine Drug Enforcement Agency where I hold the rank of Special Agent. I have been a DEA TFO for approximately three years. I have been a special agent with MDEA (and its predecessor agencies) for nearly 40 years. I am currently assigned to the DEA's Bangor, Maine, Post of Duty, within the New England Field Division. I have extensive training and experience pertaining to narcotic investigations and the investigation of various crimes which arise from drug trafficking activities. During my career as a drug investigator, I have participated in numerous investigations relating to the distribution of controlled substances, including methamphetamine, cocaine, heroin, diverted pharmaceuticals and other substances in violation of state and federal anti-drug laws, including Title 21, United States Code, Sections 841 and 846. I am familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal drugs.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers.

## ITEM TO BE SEARCHED

5. The items that I seek authority to search are more particularly described as follows:

   A. One black smartphone bearing serial number R9TT10L8PYE seized from Nicole McLauglin following her federal arrest on May 12, 2022 currently stored in the DEA Bangor evidence locker and assigned DEA Exhibit number N-1. ("Cellular Device 1")

   B. One Apple smartphone with a silver back and no visible serial number seized from Nicole McLaughlin at the time of her state arrest on May 5, 2022 currently stored in the DEA Bangor evidence locker and assigned DEA Exhibit number N-2. ("Cellular Device 2")

   C. One Apple smartphone with a purple and green case and a cracked back panel and no visible serial number seized from Nicole McLaughlin at the time of her state arrest on May 5, 2022 currently stored in the DEA Bangor evidence locker and assigned DEA Exhibit number N-3. ("Cellular Device 3")

2

## ITEMS TO BE SEIZED

6. I have probable cause to believe that in the Cellular Devices described above are the following items of evidence:

> Contact lists, drug customer lists, business records, address and telephone lists, digital photographs, digital videos, personal calendar entries, travel logs, payment, delivery receipts, e-mail messages, text messages, voice mail messages, internet search queries, internet history lists, social media chat logs, and GPS coordinates contained on the device that are evidence of offenses set forth in Title 21, United States Code, Section 841, et seq. and that are seizable pursuant to Federal Rule of Criminal Procedure 41.

> Computer hardware, software, and data contained on the device, that are evidence of offenses set forth in Title 21, United States Code, Section 841, et seq. and that are seizable pursuant to Federal Rule of Criminal Procedure 41.

## FACTS SUPPORTING PROBABLE CAUSE

### Background

7. I have learned the following from reviewing an affidavit in support of a state search warrant issued on May 5, 2022. The affidavit was authored by Presque Isle, Maine Police Department (PIPD) Corporal Stephen St. Peter:

   A. On May 5, 2022 at approximately 5:58 a.m. PIPD officers responded to a report of a single vehicle crash on Route 1 in Presque Isle. Nicole McLaughlin was determined to be the operator of the vehicle. McLaughlin was sitting in the vehicle of a good Samaritan when PIPD officers arrived.

   B. While McLaughlin was being assessed by emergency workers, a PIPD officer observed in plain view multiple items of drug paraphernalia on the driver's side floor of the vehicle. Based upon these observations, the officers conducted a further search of McLaughlin's vehicle and found an open duffel bag in the back seat which contained a clear plastic container containing what appeared to be a large amount of methamphetamine. (Subsequently determined to weigh approximately one pound.) PIPD secured the drugs and, once McLaughlin was cleared by the emergency workers, she was placed under arrest.

3

  C. Her purse was searched incident to arrest and she was found in possession of an empty firearm magazine. McLaughlin admitted to regularly carrying a firearm, but she was unsure whether it was in the vehicle.

  D. The vehicle was towed to an impound lot and PIPD applied for a search warrant to conduct a more thorough search of the vehicle. Additional evidence of narcotics offenses were found in the vehicle upon execution of the search warrant.

8. Based on the discovery of the large amount of methamphetamine, PIPD notified MDEA and an agent responded. The agent observed that Cellular Device 2 and Cellular Device 3, that McLaughlin had possessed at the time of the car accident, kept alerting with notifications appearing on the screen for missed calls, text messages, emails, Snapchat messages, and Facebook messages. Given the totality of the circumstances and relying on his training and experience to conclude that people involved in the drug trade typically use cellular devices (sometimes multiple cellular devices) to conduct drug trafficking activities, the agent seized Cellular Device 2 and Cellular Device 3. The two devices were subsequently turned over to me and I secured them in the DEA evidence locker in Bangor, Maine with the intention of applying for a search warrant at a later date.

9. As a result of the events described above, McLaughlin was arrested at the scene of the accident and charged with aggravated trafficking. She was transported to the Aroostook County Jail in Houlton, Maine and subsequently was bailed.

10. In the months leading up to the events described above, MDEA had spoken with several people who reported McLaughlin was involved in the large scale distribution of methamphetamine. Based on this information, and the information provided by PIPD, later in the day on May 5, 2022, MDEA Special Agent Brian Korhone applied for and executed a state search warrant at McLaughlin's residence.

11. As a result of the search at the McLaughlin residence on May 5, 2022, MDEA agents seized evidence, including 26 grams of methamphetamine and a locked gun safe that was removed from the residence and secured at the MDEA office in Houlton, Maine.

12. I have reviewed a second affidavit by MDEA Special Agent Brian Korhone in support of the issuance of another state search warrant for McLaughlin's residence on May 7, 2022 and learned the following in substance and in part:

   A. On May 7, 2022, MDEA agents were called back to the McLaughlin residence by the Maine State Police who were at the residence with her 17 year old son.

   B. The young man had told authorities that he lives with his step father because he could not live at his mother's house because she was selling drugs.

   C. The young man reported that he had come to the house to get some of his belongings and, in the process, found a white plastic box containing zip lock bags of what he thought were drugs. He had taken a photo of the item, but left it in the residence.

13. Upon execution of the search warrant at the McLaughlin residence on May 7, 2022, MDEA agents found an additional four pounds of methamphetamine.

14. On May 9, 2022, MDEA agents applied for and executed a state search warrant on the gun safe. Agents gained access to the safe by trying McLaughlin's date of birth as the combination for the lock. The date of birth proved to be the combination to the safe. Upon opening the safe agents recovered the following:

   A. 45 plastic bags containing a crystalline substance. The substance in several of the baggies tested positive for the presence of methamphetamine. The total weight of the 45 plastic bags was approximately 91.7 pounds.

   B. Four firearms, including one with an obliterated serial number that corresponded to the make, model and caliber of the empty magazine seized from McLaughlin's purse following the car accident on May 5, 2022.

   C. Approximately $800 in cash.

   D. A warranty deed for the Caswell residence in the name of Nicole Mclaughlin.

15. Following the events described above, I applied for and was granted a federal criminal complaint charging McLaughlin with one count of possession with intent to distribute 500 grams or more of methamphetamine in violation of Title 21, United States Code, Section 841(a)(1) and a warrant for her arrest was issued. McLaughlin was located and arrested by MDEA agents on May 12, 2022. At the time of her arrest, she was in possession of Cellular Device 1. The arresting agent concluded that, given McLaughlin's apparent involvement in large scale drug trafficking, Cellular Device 1 likely contained evidence of that activity. Accordingly, the arresting agent detained Cellular Device 1, which was subsequently turned over to me and I secured it in the DEA evidence locker in Bangor, Maine, with the intention of applying for a search warrant.

16. I have reviewed an MDEA report concerning a February 25, 2022 interview with a state drug defendant who was providing information in hopes of cooperation in state prosecution. According to the report, no promises were made in this regard, however, the defendant (Defendant 1) provided information about his drug dealings with McLaughlin. He indicated that he was buying fentanyl and methamphetamine from McLaughlin and he would set up the deals by contacting McLaughlin over Facebook Messenger.

17. I have reviewed an MDEA report concerning a March 1, 2022 interview with a state drug defendant who was providing information in hopes of cooperation in state prosecution. According to the report, no promises were made in this regard, however, the defendant (Defendant 2) provided information about her drug dealings with McLaughlin. She indicated that she was buying fentanyl and methamphetamine from McLaughlin and she would set up the deals by contacting McLaughlin by telephone calls or text messaging.

## TRAINING AND EXPERIENCE

18. As discussed above, I have received extensive training on how to conduct narcotics trafficking investigations, and I have years of experience in conducting those investigations. Based on my training and experience, I know that 91.7 pounds of methamphetamine is consistent with an intent to distribute. A pound of methamphetamine in Aroostook County has an approximate street value of $12,000, thus 91.7 pounds of the drug has an approximate street value of $1,068,000. If sold by the gram, the methamphetamine has an approximate street value of nearly $4 million. I also know that firearms are tools of the drug trade and the fact that firearms were seized in close proximity to large quantities of narcotics in McLaughlin's vehicle and a safe at her residence that could be accessed with a combination matching her date of birth are strong indications that McLaughlin is significantly involved in the drug trade.

19. Based on my training and experience, I know that narcotics traffickers regularly use cellular telephones to maintain contact with their sources of supply, their customers, and their couriers. The devices are used to send and receive drug related text, e-mail messages and social media messages (e.g., Facebook Messenger messages) that sometimes remain on the phones. Drug related messages are often not explicit in nature but are, instead, veiled, coded or non-specific. For example, a customer may simply send a message to his dealer indicating "I'm on my way over" or a dealer may message her supplier that she is "ready to meet." I believe that there are relevant communications between McLaughlin and her drug associates, customers and supplier on the Cellular Devices.

20. Based on my training and experience, I know that the devices are also used to save contact names and numbers for sources of supply, customers, couriers, and associates. These names and numbers will assist me in identifying other targets of my investigation, as well

as potential witnesses. The devices also contain logs of calls, text messages and social media messages that are important evidence of who the subject of the owner of the device is in touch with, when the contact is made, and how often.

21. Based on my training and experience, I know that cellular devices like the ones described in Section I have the ability to take and save photographs and videos, store information, and access the internet. Based on my training and experience and conversations with other law enforcement agents who conduct narcotics trafficking investigations, I know that drug traffickers use these devices to store photographs of associates, search the internet for various drug related purposes, and access their social media accounts and those of their associates. I have known drug traffickers to take photographs of themselves with their criminal associates, drugs, firearms, and drug proceeds.

22. Based on my training and experience, my involvement in this investigation, and conversations with other law enforcement agents who conduct narcotics trafficking investigations, I know that people involved in narcotics trafficking will frequently use multiple cellular devices. Traffickers have been known to give certain telephone numbers to certain customers, while a number for a different device will be provided to other customers or suppliers. In my experience, traffickers will change their telephone numbers to avoid law enforcement detection, however, they will save their old devices as they contain important information used to maintain their drug trafficking activity.

23. Based on my training and experience, my involvement in this investigation, and conversations with other law enforcement agents who conduct narcotics trafficking investigations, I know searches of cellular devices have yielded evidence of contact and association between and among narcotics traffickers, customers and associates, including the items described in paragraph 6, above. Based upon the facts described above, there is probable

8

cause to believe that McLaughlin and others are involved in the distribution of narcotics and a search of the Cellular Devices described above in section I would likely produce evidence of associations, drug customers, and drug suppliers.

## CONCLUSION

24. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that the Cellular Devices contain the items of evidence described in paragraph 6, above, and accordingly, a search warrant is requested.

Jonathan L. Richards
Task Force Officer
United States Drug Enforcement Administration

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Jun 23 2022

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title

9